**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOSEPH STAHURSKI,** | : | **Civil No.  3:22-CV-1807** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **MARTIN O'MALLEY,**[1] | : | |
| **Commissioner of Social Security** | : | |
| | : | |
| **Defendant.** | : | |

**MEMORANDUM OPINION**

## I.    Introduction

For Administrative Law Judges (ALJs), Social Security disability determinations frequently entail an informed assessment of competing medical opinions coupled with an evaluation of a claimant's subjective complaints. Once the ALJ completes this task, on appeal it is the duty and responsibility of the district court to review these ALJ findings, judging the findings against a deferential standard of review which simply asks whether the ALJ's decision is supported by substantial evidence in the record, see 42 U.S.C. § 405(g); Johnson v. Comm'r of

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Accordingly, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g), Martin O'Malley is substituted for Kilolo Kijakazi as the defendant in this suit.

Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F. Supp.2d 533, 536 (M.D. Pa. 2012), a quantum of proof which "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). This informed assessment by the ALJ, however, must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Thus, the Social Security Act and case law construing the Act place a duty of articulation upon ALJ's which is essential to informed evaluation of disability determinations on appeal. It is also well settled that, while an ALJ may choose which medical opinions to credit, an ALJ may not substitute his own lay opinion for that of a medical expert. See Ferguson v. Schweiker, 765 F.2d 31, 37 (3d Cir.1985) ("An ALJ is not free to set his own expertise against that of a physician who presents competent evidence" by independently "reviewing and interpreting" the medical evidence.); Morales v. Apfel, 225 F.3d 310, 317–18 (3d Cir. 2000). See also Arnone v. Saul, No. 3:20-CV-00750, 2021 WL 963482, at *5 (M.D. Pa. Mar. 15, 2021); McKay v. Colvin, No. 3:14-CV-2020, 2015 WL 5124119, at *17 (M.D. Pa. Aug. 13, 2015).

We are reminded of these guiding tenets of Social Security practice as we turn to this case. In the instant case, an ALJ denied Joseph Stahurski's disability application, which alleged disability beginning on July 25, 2020, in part due to degenerative disc disease causing chronic lower back pain. However, in reaching this result the ALJ did not include a provision in the residual functional capacity (RFC) to account for Stahurski's use of an assistive device to ambulate because the ALJ found his use of a cane was not medically necessary. The ALJ reached this conclusion based upon MRI and EMG results and the results of a consultative examination showing no significant deficits in strength or sensation in Stahurski's lower extremities. But the ALJ's interpretation of the medical evidence stands in stark contrast to the countervailing evidence regarding Stahurski's use of a cane, including documentation in his medical records of a cane being prescribed and fitted, the opinion of the consultative examiner that Stahurski's cane was medically necessary, and Stahurski's own testimony that he needed a cane to ambulate in the community due to his pain.

In our view, given the evidence which reveals that Stahurski was prescribed a cane, was referred for a cane and routinely used that cane, more is needed here to justify the ALJ's decision which fashioned an RFC for Stahurski that wholly discounted his use of a cane and instead required him "to perform light work as

defined in 20 CFR 404.1567(b) . . . and could perform a total of 4 hours of standing and/or walking and 6 hours of sitting in an eight-hour workday. . . ." (Tr. 20). Indeed, in similar circumstances we have held that when an ALJ crafts an RFC for a claimant that includes significant mobility requirements, without accounting for their need for an assistive device, a remand is warranted. See Jordan v. Kijakazi, No. 1:21-CV-01975, 2023 WL 2616099 (M.D. Pa. Mar. 23, 2023); Dieter v. Saul, No. 1:19-CV-1081, 2020 WL 2839087 (M.D. Pa. June 1, 2020). Accordingly, for the reasons set forth below, we will remand this case for further consideration by the Commissioner.

## II.   Statement of Facts and of the Case

Because we have determined that a remand is necessary due to the failure of the ALJ to account for Stahurski's use of an assistive device in the RFC, we will focus upon this issue when assessing the record.

On April 13, 2021, Stahurski filed a claim for disability and disability insurance benefits (DIB) under Title II of the Social Security Act, alleging an onset of disability beginning on July 25, 2020.[2] (Tr. 15). Stahurski was 48 years old on the alleged date of the onset of his disability, which was defined as a younger individual

---

[2] Stahurski previously applied for disability insurance benefits alleging disability beginning March 31, 2017. His claim was denied by an ALJ after a hearing on July 24, 2020. (Tr. 169-89).

under the regulations, but subsequently changed age category to closely approaching

advanced age. (Tr. 27). He has a high school education and previously worked as an

electronics technician. (Tr. 27-28).

On his application for disability benefits, Stahurski alleged he was disabled

due to migraines, cervical radiculopathy, high blood pressure, hypercholesterolemia,

spondylosis, lumbar radiculopathy, degeneration on the lumbar intervertebral disc,

low back pain, and tinnitus in both ears. (Tr. 191). As the ALJ highlighted, the

treatment of Stahurski's lower back pain was marked by relatively normal physical

examination findings, but continued reports of chronic pain. As the ALJ explained:

> From the time of the alleged onset date and throughout the relevant
> period, the claimant has continued to receive chiropractic treatment and
> acupuncture for the lumbar spine (Exhibits C1F, C6F, Pgs. 77-96, C9F,
> Pgs. 2-8 and 29-75 and C10F, Pgs. 46 and 54).  The record also shows
> the claimant established treatment with a physiatrist on June 16, 2020.
> These records show the claimant was recently given a steroid pack
> medicine and wanted to continue with acupuncture or maybe get an
> injection. The record then shows treatment with a right SI joint injection
> on July 7, 2020 (Exhibits C2F, Pg. 94 and C10F, Pgs. 331 and 340-
> 341). Treatment records from August 13, 2020 note the claimant
> reported a pain level of four in the low back and right hip and that he
> wanted to continue to chiropractic treatment and acupuncture due to
> great relief with that treatment. These records also indicate the claimant
> reported he takes Flexeril and Lidocaine but, when his back pain
> increases in intensity, then he would like to take Tramadol once in a
> while. On examination, the claimant had mild tenderness at the right
> L4-5 paraspinal muscle and positive straight leg raise on the right but
> motor strength in was full (5/5) in all muscle groups of the lower
> extremities and the claimant's gait was within normal limits (Exhibits

C2F, Pgs. 83-84 and C10F, Pgs. 314-315).  In addition, records from September 24, 2020 show the claimant reported neck pain and on examination was found to have a slight reduction (+4/5) in strength the upper extremities but with reflexes and sensation within normal limits and negative Spurling's test (Exhibit C10F, Pgs. 285-286). Records from November 17, 2020 note the claimant requesting a single point cane because he felt he needed one (Exhibit 2F, Pg. 55).

Subsequent records in 2020 show the claimant continued conservative treatment for his symptoms (Exhibit C10F, Pg. 271).  Records from January 19, 2021 note the claimant requesting ongoing chiropractic care (Exhibit C10F, Pg. 269). Clinical findings on February 8, 2021 continue to note tenderness over the SI joints right more than left and note slight reductions in lower extremity strength (-4/5) but normal sensation and reflexes. Similar to prior cervical findings, the was found to have a slight reduction in strength (+4/5) in the upper extremities but with reflexes and sensation within normal limits and negative Spurling's test (Exhibit C10F, Pgs. 244 and 245). Records from March 4, 2021 note the claimant again requesting a single point cane because he felt he needed one (Exhibit 2F, Pg. 21). However, a medical note from March 17, 2021 indicates that while the claimant had prior herniation and was seen by neurosurgery in 2012, the subsequent MRI showed almost complete reabsorption (80-90%) of the disc herniation (Exhibits C2F, Pg. 10 and C10F, Pg. 217) [Emphasis Added].

Further, clinical findings from May 11, 2021 again indicate tenderness over the SI joints, right more than left, slight reductions in lower extremity strength (-4/5), normal sensation and reflexes in the lower extremities, only slight reduction in strength (+4/5) in the upper extremities, normal reflexes and sensation in the upper extremities and negative Spurling's test (Exhibit C3F, Pg. 20)  Similar findings are also noted in treatment records from July 15, 2021. (Exhibit C5F, Pgs. 13-14).

(Tr. 22-23).

Despite the ALJ's relatively benign characterization of Stahurski's lower back impairments, the record demonstrates that, throughout the relevant period, Stahurski used an assistive device due to his lower back pain. At the disability hearing on May 16, 2022, Stahurski testified that he experiences continuous constant lower back pain that, at times, causes him to be unable to walk at all without stanchion crutches. (Tr. 45). Most of the time he stated he has pain in his hips that radiates down his right leg which affects the way he walks, sits, and sleeps. (Tr. 44-45). When asked about his difficulty walking, he testified:

> Q: Okay. So, with the difficulty walking, do you sometimes use an assisted device?
> A: Yes. A cane. Most of the time, I use a cane and that would depend on my planning on how far I'm going to walk or if I have to go somewhere where I have to walk, I use a cane.
> Q: Okay.
> A: And if I get really bad and I'm not steady or – I'll use a stanchion crutch. It's a little more support on my right side.

(Tr. 45). A vocational expert also testified at the hearing and stated that the necessity of a cane for ambulation would significantly reduce one's ability to perform light duty jobs in general. (Tr. 57). Stahurski's August 2021 function report also states that he was prescribed crutches and uses a cane every day. (Tr. 363). A previous function report stated he uses his cane when having a bad back event or walking long distances. (Tr. 325).

7

The medical records show that Stahurski was fitted, issued, and instructed in the use of forearm crutches in November 2017 and participated in gait training and stair negotiation with the assistive device for low back pain. (Tr. 67). During the relevant period, Stahurski was treating his back pain with physical therapy, acupuncture, chiropractic treatments, and medications. A physical therapy note from November 17, 2020, stated that his back pain was only 4/10 but that it can increase up to 10/10 when he tries to ambulate. He asked for a single point cane for community ambulation. (Tr. 490). A prosthetic consult was entered for a single point cane in March 2021, after Stahurski reported to his physical therapist that he could hardly ambulate in his home and when he tried to ambulate in the community, especially going to medical appointments and stores, he felt he needed a single point cane. (Tr. 455-56). On June 1, 2021, he was fitted with a single point cane by physical therapist Susko and educated on its safe usage. (Tr. 666). By September 2021, after a procedure on his back, it was noted he was walking "better" and not relying on his cane "as much." (Tr. 1186). And in March 2022 and NSG clinic note stated he was still experiencing right hip pain rated at 4/10. (Tr. 1130).

On June 3, 2021, Stahurski presented for a consultative examination with Nurse Practitioner Tara Cywinski. NP Cywinski noted that he used a cane and, at times, crutches as assistive devices and presented to the examination with a cane.

(Tr. 626). She noted that he uses a cane for ambulation because of right hip pain. (Tr. 625). The examination revealed an antalgic gait favoring the right lower extremity and that he was unable to walk on his heels and toes due to the gait imbalance. (Tr. 627). NP Cywinski opined that Stahurski required the use of a cane to ambulate, that he could only ambulate 50-75 feet without the use of a cane, and that the use of a cane was medically necessary. (Tr. 631).

Following a hearing on Stahurski's disability application, the ALJ issued a decision denying Stahurski's claim on May 26, 2022. (Tr. 12-33). In that decision, the ALJ first concluded that Stahurski had not engaged in substantial gainful activity since his alleged onset date of disability, July 25, 2020, through his date last insured of December 31, 2021. (Tr. 18). At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found that Stahurski had the following severe impairments: degenerative disc disease of the cervical spine with radiculopathy and history of anterior cervical discectomy and fusion, degenerative disc disease of the lumbar spine with radiculopathy and chronic tension headaches with migrainosus component. (Id.) At Step 3, the ALJ determined that Stahurski's impairments or combination of impairments did not meet or medically equal one of the listed impairments. (Tr. 19).

9

Between Steps 3 and 4, the ALJ concluded that Stahurski retained the following residual functional capacity:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) in that the claimant could lift and carry twenty pounds occasionally and ten pounds frequently, and could perform a total of 4 hours of standing and/or walking and 6 hours of sitting in an eight-hour workday. The claimant can occasionally climb ramps and stairs but never climb ladders, ropes or scaffolds or crawl. The claimant can occasionally balance and stoop, and can frequently kneel and crouch. The claimant must avoid concentrated exposure to extreme cold, vibration and hazards, such as unprotected heights and dangerous moving machinery.

(Tr. 20). This RFC – which called for Stahurski to perform light work as defined by 20 CFR 404.1567(b) and occasionally balance and stoop and frequently kneel and crouch – made no provision whatsoever for Stahurski's medical referral for a cane. Indeed, in March 2021 a prosthetic consult was entered for a single point cane and Stahurski was fitted for a cane in July 2021. (Tr. 456, 666). Also, according to the record, Stahurski was prescribed forearm crutches in 2017 prior to his alleged onset date of disability. (Tr. 67).

The ALJ justified this decision to completely discount Stahurski's documented use of a cane in the RFC by asserting that:

> There was no limitation for the use of a cane, as the record clearly shows the claimant is using a cane at times because he feels he needs

10

it, but EMG testing was normal, MRI testing showed reabsorption of disk material and updated testing did not show any abnormalities that would support a need for cane use, as did the examination findings from the treatment records and consultative examination, which show no significant deficits in strength, sensation or reflexes.

(Tr. 25).

On this score, the ALJ found the opinion of consultative examiner CRNP Cywinski partially persuasive, but found her opinion regarding Stahurski's cane use not persuasive, explaining:

> [T]he remainder of the limitations, including cane use, were not persuasive because they are not well supported by objective findings from the examination, including full strength in the left lower extremity and bilateral upper extremities, intact reflexes and sensation in the upper and lower extremities, otherwise normal musculoskeletal range of motion and full grip strength and intact hand and finger dexterity. This degree of limitation is also not supported by updated diagnostic testing that showed relatively well-maintained height of the vertebral bodies and intervertebral disc spaces, intact pedicles throughout and only a grade one spondylolisthesis of L5 on S1 (Exhibit 4F).  In addition, this degree of limitation is not consistent with clinical findings from the treatment records, which note a gait within normal limits, only a slight reduction (+4/5) in strength in the upper extremities with reflexes and sensation within normal limits (Exhibits C2F, Pgs. 84C10F, Pgs. 285-286). These limitations are also inconsistent with references in the record to the claimant requesting a cane because he felt he needed one and no direct statement from a provider that it is medically necessary (Exhibit 2F, Pgs. 21 and 55). Further, these portions of the opinion are not consistent with the level of treatment, which is conservative in nature with no need for updated testing or referral to an orthopedic or neurosurgeon for treatment and not consistent with the most recent MRI interpretation indicating a reabsorption of disc material (Exhibits C2F, Pg. 10 and C10F, Pg. 217).

11

> Lastly, this opinion was from a one-time examination and the examiner did not review all the medical evidence of record available at that time.

(Tr. 24-25).

The ALJ also considered the opinions of State agency consultants Dr. Bermudez and Dr. Lombard and found their opinions to be persuasive. Notably, neither State agency physician specifically opined on Stahurski's cane use, although Dr. Bermudez acknowledged treatment records from 2021 stating he needed an assistive device to ambulate and gait imbalance and Dr. Lombard also noted his antalgic gait. (Tr. 201-02, 211-12). Thus, the ALJ's decision to discount Stahurski's use of a cane was not based upon any medical opinion stating it was not medically necessary and was made in the face of records indicating that the use of a cane was medically necessary.

After explaining his reasoning behind the RFC, the ALJ then found that transferability of job skills was not material to the determination of disability because the Medical-Vocational Rules supported a finding that Stahurski was "not disabled" whether or not he had transferable job skills. (Tr. 28). The ALJ then concluded that there were jobs that existed in the significant numbers in the national economy that Stahurski could have performed through the date last insured and thus

Stahurski was not under a disability at any time during the disability period. (Tr. 28-29).

This appeal followed. (Doc. 1). On appeal, Stahurski argues that the ALJ failed to account for the total limiting effects of his severe impairments by omitting his mobility devices and off-task limitations related to migraines and back pain from the RFC. We find that, with regard to the ALJ's rejection of Stahurski's mobility devices in the RFC, the ALJ's decision was not supported by substantial evidence. Accordingly, we will remand this case for further consideration and evaluation of the medical evidence as it pertains to this issue.

## III.   Discussion

### A.   Substantial Evidence Review – the Role of this Court

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.  See 42 U.S.C. §405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F. Supp.2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." <u>Pierce v. Underwood</u>, 487 U.S. 552, 565 (1988).  Substantial

evidence is less than a preponderance of the evidence but more than a mere scintilla.

<u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971). A single piece of evidence is not

substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a

conflict created by the evidence. <u>Mason v. Shalala</u>, 994 F.2d 1058, 1064 (3d Cir.

1993). But in an adequately developed factual record, substantial evidence may be

"something less than the weight of the evidence, and the possibility of drawing two

inconsistent conclusions from the evidence does not prevent [the ALJ's decision]

from being supported by substantial evidence." <u>Consolo v. Fed. Maritime Comm'n</u>,

383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is

supported by substantial evidence the court must scrutinize the record as a whole."

<u>Leslie v. Barnhart</u>, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has recently underscored for us the limited scope of our

review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout
> administrative law to describe how courts are to review agency
> factfinding. <u>T-Mobile South, LLC v. Roswell</u>, 574 U.S. ——, ——,
> 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-
> evidence standard, a court looks to an existing administrative record
> and asks whether it contains "sufficien[t] evidence" to support the
> agency's factual determinations. <u>Consolidated Edison Co. v. NLRB</u>,
> 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis
> deleted). And whatever the meaning of "substantial" in other contexts,

the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S.Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek, 139 S. Ct. at 1154.

The question before this Court, therefore, is not whether the claimant is disabled, but rather whether the Commissioner's finding that he is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); Burton v. Schweiker, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); Ficca, 901 F. Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

Several fundamental legal propositions which flow from this deferential standard of review. First, when conducting this review "we are mindful that we must

not substitute our own judgment for that of the fact finder." Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014) (citing Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005)). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather our task is to simply determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted on this score:

> In Burnett, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. Id. at 120; see Jones v. Barnhart, 364 F.3d 501, 505 & n. 3 (3d Cir.2004). The ALJ, of course, need not employ particular "magic" words: "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." Jones, 364 F.3d at 505.

Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

**B.**    **Initial Burdens of Proof, Persuasion, and Articulation for the ALJ**

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); see also 20 C.F.R. §404.1505(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy.  42 U.S.C. §423(d)(2)(A); 20 C.F.R. §404.1505(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §404.1520(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant

is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").  20 C.F.R. §404.1520(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC).  RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."  Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§404.1520(e), 404.1545(a)(1).  In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §404.1545(a)(2).

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that the claimant experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical opinion support for an RFC determination and have suggested that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." Biller v. Acting Comm'r of Soc. Sec., 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013)

18

(quoting <u>Gormont v. Astrue</u>, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4, 2013)). In other instances, it has been held that: "There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." <u>Titterington v. Barnhart</u>, 174 F. App'x 6, 11 (3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." <u>Cummings v. Colvin</u>, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where a well-supported medical source has identified limitations that would support a disability claim, but an ALJ has rejected the medical opinion which supported a disability determination based upon a lay assessment of other evidence. <u>Biller</u>, 962 F.Supp.2d at 778–79. In this setting, these cases simply restate the commonplace idea that medical opinions are entitled to careful consideration when making a disability determination, particularly when those opinions support a finding of disability. In contrast, when an ALJ is relying upon other evidence, such

as contrasting clinical or opinion evidence or testimony regarding the claimant's activities of daily living, to fashion an RFC courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. See Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006); Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015). In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002); see also Metzger v. Berryhill, No. 3:16-CV-1929, 2017 WL 1483328, at *5 (M.D. Pa. Mar. 29, 2017), report and recommendation adopted sub nom. Metzgar v. Colvin, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017); Rathbun v. Berryhill, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12, 2018), report and recommendation adopted, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018).

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. Mason, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that the claimant could

perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. §404.1512(f); <u>Mason</u>, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." <u>Cotter v. Harris</u>, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. <u>Id.</u> at 706-07. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." <u>Schaudeck v. Comm'r of Soc. Sec</u>., 181 F.3d 429, 433 (3d Cir. 1999).

## C.    <u>Legal Benchmarks for the ALJ's Assessment of Medical Opinion Evidence</u>

The plaintiff filed this disability application in June of 2019 after a paradigm shift in the manner in which medical opinions were evaluated when assessing Social Security claims. Prior to March 2017, ALJs were required to follow regulations which defined medical opinions narrowly and created a hierarchy of medical source

opinions with treating sources at the apex of this hierarchy. However, in March of 2017, the Commissioner's regulations governing medical opinions changed in a number of fundamental ways. The range of opinions that ALJs were enjoined to consider were broadened substantially, and the approach to evaluating opinions was changed from a hierarchical form of review to a more holistic analysis. As one court as aptly observed:

> The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017, and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded. According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." Revisions to Rules Regarding the Evaluation of Medical Evidence ("Revisions to Rules"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867–68 (Jan. 18, 2017), see 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).
>
> Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." Id. at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1). The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the foundation of the treating source rule. Revisions to Rules, 82 Fed. Reg. 5844-01 at 5853.

22

An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c (b)(2), 416.920c(b)(2). With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." Id. at §§ 404.1520c(c)(1), 416.920c(c)(1). The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." Id. at §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. Id. at §§ 404.1520c(b)(2), 416.920c(b)(2). However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5). Id. at §§ 404.1520c(b)(3), 416.920c(b)(3).

Andrew G. v. Comm'r of Soc. Sec., No. 3:19-CV-0942 (ML), 2020 WL 5848776, at

*5 (N.D.N.Y. Oct. 1, 2020).

Oftentimes, as in this case, an ALJ must evaluate various medical opinions.

Judicial review of this aspect of ALJ decision-making is still guided by several

settled legal tenets. First, when presented with a disputed factual record, it is well-

established that "[t]he ALJ – not treating or examining physicians or State agency

consultants – must make the ultimate disability and RFC determinations." Chandler

23

v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011). Thus, when evaluating medical opinions "the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Mason, 994 F.2d at 1066). Therefore, provided that the decision is accompanied by an adequate, articulated rationale, it is the province and the duty of the ALJ to choose which medical opinions and evidence deserve greater weight.

Further, in making this assessment of medical evidence:

> An ALJ is [also] entitled generally to credit parts of an opinion without crediting the entire opinion. See Thackara v. Colvin, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015); Turner v. Colvin, 964 F. Supp. 2d 21, 29 (D.D.C. 2013) (agreeing that "SSR 96–2p does not prohibit the ALJ from crediting some parts of a treating source's opinion and rejecting other portions"); Connors v. Astrue, No. 10–CV–197–PB, 2011 WL 2359055, at *9 (D.N.H. June 10, 2011). It follows that an ALJ can give partial credit to all medical opinions and can formulate an RFC based on different parts from the different medical opinions. See e.g., Thackara v. Colvin, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015).

Durden v. Colvin, 191 F.Supp.3d 429, 455 (M.D. Pa. 2016). Finally, where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." Cummings, 129 F.Supp.3d at 214–15.

These principles apply with particular force to analysis of a claimant's need to use a cane where we have held that:

> [I]f the claimant makes this threshold showing of medical necessity, then it is incumbent upon the ALJ to directly "address the evidence concerning Plaintiff's use of" the assistive device. <u>Steward v. Comm'r of Soc. Sec.</u>, No. CIV.A 08-1741, 2009 WL 1783533, at *5 (W.D. Pa. June 23, 2009). Moreover, the failure to do so may require a remand. <u>Id.</u> Likewise, when the evidence indicates that the use of a cane is medically required and a vocational expert testifies that the plaintiff's use of an assistive device would render her unable to work, it is error for the ALJ to fail to set forth the reasons for rejecting this expert testimony, and the case should be remanded. <u>Altomare v. Barnhart</u>, 394 F. Supp. 2d 678, 682 (E.D. Pa. 2005). In short, where substantial evidence indicates that there is a medical need for a claimant to use a cane or assistive device, and a vocational expert testified that such use significantly erodes the employment base for a claimant, the failure to adequately address these issues constitutes a failure of articulation by the ALJ warranting a remand. <u>See e.g.</u>, <u>Graver v. Colvin</u>, No. 3:13CV1811, 2014 WL 1746976, at *5 (M.D. Pa. May 1, 2014); <u>Butler v. Astrue</u>, No. CIV.A. 11-376, 2012 WL 1252758, at *7 (W.D. Pa. Apr. 13, 2012).

<u>Jordan v. Kijakazi</u>, No. 1:21-CV-01975, 2023 WL 2616099, at *8 (M.D. Pa. Mar. 23, 2023).

It is against this backdrop that we evaluate the decision of the ALJ in this case.

**E.   This Case Will Be Remanded for Further Review.**

On appeal, the plaintiff challenges the ALJ's RFC determination, arguing that it was underinclusive and failed to account for the total limiting effects of his severe impairments. Specifically, the plaintiff alleges, among other arguments, that it was error for the ALJ to omit his need for mobility devices from the RFC despite medical

evidence, including a consultative examiner opinion, demonstrating his use of a cane was medically necessary.

We agree.

Case law and Social Security regulations both recognize that a claimant's need to use an assistive device to ambulate can dramatically and adversely affect the ability to perform work on a sustained basis. Accordingly, in certain instances, the use of a cane to ambulate can be outcome determinative in a Social Security appeal. At the outset, in order to rely upon evidence regarding the use of a cane to sustain a disability claim, the assistive device must be medically necessary. On this score:

> Social Security regulations provide that an ALJ will not accommodate the use of a cane unless the claimant first provides "medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed[.]" SSR 96–9p. Absent such documentation, an ALJ need not accommodate the use of a cane in a residual functional capacity assessment, even if the claimant was prescribed a cane by a doctor.

Williams v. Colvin, No. 3:13-CV-2158, 2014 WL 4918469, at *10 (M.D. Pa. Sept. 30, 2014) (citing Howze v. Barnhart, 53 Fed.Appx. 218, 222 (3d Cir. 2002)).

However, if the claimant makes this threshold showing of medical necessity, then it is incumbent upon the ALJ to directly "address the evidence concerning Plaintiff's use of" the assistive device. Steward v. Comm'r of Soc. Sec., No. CIV.A 08-1741, 2009 WL 1783533, at *5 (W.D. Pa. June 23, 2009). Moreover, the failure

to do so may require a remand. Id. In short, where substantial evidence indicates that there is a medical need for a claimant to use a cane or assistive device, and a vocational expert testified that such use significantly erodes the employment base for a claimant, the failure to adequately address these issues constitutes a failure of articulation by the ALJ warranting a remand. See e.g., Graver v. Colvin, No. 3:13CV1811, 2014 WL 1746976, at *5 (M.D. Pa. May 1, 2014); Butler v. Astrue, No. CIV.A. 11-376, 2012 WL 1252758, at *7 (W.D. Pa. Apr. 13, 2012). These principles which recognize the limiting effects of an assistive on employment apply with particular force in a case such as this when an ALJ crafts an RFC for a claimant that includes significant mobility requirements, without accounting for her need for a cane. See Dieter, 2020 WL 2839087, at *9. In such instances a remand may be necessary.

Here, the ALJ acknowledged that Stahurski "feels he needs" a cane for ambulation but found that the objective medical evidence did not support such a limitation. As the ALJ explained:

> There was no limitation for the use of a cane, as the record clearly shows the claimant is using a cane at times because he feels he needs it, but EMG testing was normal, MRI testing showed reabsorption of disk material and updated testing did not show any abnormalities that would support a need for cane use, as did the examination findings from the treatment records and consultative examination, which show no significant deficits in strength, sensation or reflexes.

27

(Tr. 25). In our view, this does not adequately contemplate the evidence since the ALJ simply dismissed this limitation as something the plaintiff "feels he needs" but did not address the objective and opinion evidence tending to show it as a medical necessity. Nor does this cursory discussion address the consultative expert's finding that Stahurski's use of a cane was medically necessary. While the ALJ cites to objectively unremarkable MRI and EMG test results and normal strength, sensation, and reflexes upon examination to support this lay judgment of medical necessity, as the plaintiff points out, his medical need for the use of a cane was not due to deficits in strength, sensation, or reflexes, but rather due to chronic pain in his back and hip that made it difficult for him to ambulate. His subjective complaints of pain are supported by the medical records in which he consistently reports low back pain that he was treating with joint injections, acupuncture, physical therapy, and medication. Notes from his physiatrist Dr. Iqbal during the relevant period note lumbar spondylosis and muscle spasms in the midback and neck and joint and leg pain. (Tr. 650-676).

Moreover, Stahurski's need for a cane is documented in his medical records and was confirmed by the consultative examiner and Stahurski's own testimony. As to the objective medical evidence, prior to the disability onset date, in 2017,

Stahurski was fitted, issued, and instructed in the use of forearm crutches for low back pain. (Tr. 67). Stahurski testified that he will still sometimes use a stanchion crutch if he needs more support on his right side. (Tr. 45). Closer to the onset date, in November 2020, a physical medicine rehabilitation note stated that his back pain "can increase up to 10/10 when he tries to ambulate," and stated that he asked for a single point cane for community ambulation. (Tr. 490). In March 2021, another physical medicine rehabilitation note stated that, "he can hardly ambulate in his home, but when he tries to ambulate in community, specially [sic] going to medical appointments and going for stores to buy items of daily life and medical needs, he feels the need of [single point cane]." (Tr. 456). On June 1, 2021, he was fitted with a single point cane by physical therapist Susko and educated on its safe usage. (Tr. 666). Notes stated the reason for the equipment was other spondylosis, lumbar region. (Id.) By September 2021, after a procedure on his back, it was noted he was walking "better" and not relying on his cane "as much." (Tr. 1186). And in March 2022 and NSG clinic note stated he was still experiencing right hip pain rated at 4/10. (Tr. 1130).

The opinion of consultative examiner NP Tara Cywinski also supports Stahurski's need for an assistive device. At his consultative examination on June 3, 2021, Stahurski presented with a cane, which he stated he used for ambulation due

to right hip pain. (Tr. 625-26). NP Cywinski noted an antalgic gait favoring his right lower extremity and that he was unable to walk on his heels and toes due to gait imbalance. (Tr. 627). In her opinion about Stahurski's RFC, which she based off her examination of the plaintiff, NP Cywinski opined that Stahurski required the use of a cane to ambulate, could only ambulate 50-75 feet without a cane, and that the use of a cane was medically necessary. (Tr. 631).

Stahurski himself also testified that he uses a cane "most of the time . . . if I have to go somewhere I have to walk, I use a cane." (Tr. 45). He also stated that "if I get really bad and I'm not steady or – I'll use a stanchion crutch. It's a little more support on my right side." (Id.) An August 29, 2021, function report also noted that he was prescribed a cane and crutches and used them every day. (Tr. 363).

Importantly, no medical expert opined that Stahurski did not require a cane to ambulate. Although the State agency consulting physicians' opinions supported the stand/sit/walk limitations described by the ALJ in the RFC assessment and noted that they believed the consultative examiner's stand/walk limitations were exaggerated and not adequately supported by the examination findings and longitudinal evidence, the initial and reconsideration disability determinations both noted that Stahurski used a cane for ambulation. (Tr. 202, 212). Dr. Bermudez acknowledged treatment records from 2021 stating he needs an assistive device to

ambulate and noting a gait imbalance and Dr. Lombard also noted evidence of right lower extremity weakness and antalgic gait in the record. (Tr. 211). Thus, although these State agency consultants found the stand/sit/walk limitations of the consultative examiner to be exaggerated they did not go so far as to state that his cane use was not medically necessary.

Therefore, it was only the ALJ's interpretation of the medical evidence that supported his opinion that a cane was not medically necessary. This opinion is cast against the weight of the medical evidence and opinions indicating that a cane was medically necessary, not due to the deficits cited by the ALJ, but due to Stahurski's well-documented pain. Under the regulations, it is well settled that "[a]n ALJ's decision to ignore medical evidence and substitute his or her own views for such an opinion is erroneous. As a lay person, the ALJ simply is not qualified to interpret raw medical data in functional terms." § 25:66. An ALJ may not substitute his or her own opinion for medical evidence, 3 Soc. Sec. Disab. Claims Prac. & Proc. § 25:66 (2nd ed.); see e.g. Ferguson v. Schweiker, 765 F.2d 31, 37 (3d Cir.1985) ("An ALJ is not free to set his own expertise against that of a physician who presents competent evidence" by independently "reviewing and interpreting" the medical evidence.); Morales v. Apfel, 225 F.3d 310, 317–18 (3d Cir. 2000). See also Arnone v. Saul, No. 3:20-CV-00750, 2021 WL 963482, at *5 (M.D. Pa. Mar. 15, 2021); McKay v.

31

Colvin, No. 3:14-CV-2020, 2015 WL 5124119, at *17 (M.D. Pa. Aug. 13, 2015);

Niewierski v. Astrue, 737 F. Supp. 2d 459, 156 Soc. Sec. Rep. Serv. 620 (W.D. Pa.

2010).

Here, the ALJ erroneously supplanted his own interpretation of the evidence

to determine a cane was not medically necessary despite the evidence, including

medical opinions, objective medical records, and the plaintiff's own testimony,

showing otherwise. This error in the ALJ's reasoning prejudiced the plaintiff, since,

at the hearing, a vocational expert testified that the necessity of a cane for ambulation

would significantly reduce one's ability to perform light duty jobs in general. (Tr.

57).   Since we find no medical evidence supporting the ALJ's view that Stahurski

merely used a cane because he "felt he needed one" this case will be remanded for

further review of this issue.

In our view, more is needed by way of an explanation.  Since the ALJ's burden

of articulation is not met in the instant case, this matter must be remanded for further

consideration by the Commissioner. Yet, while we reach this result, we note that

nothing in this Memorandum Opinion should be deemed as expressing a judgment

on what the ultimate outcome of any reassessment of this evidence should be. Rather,

the task should remain the duty and province of the ALJ on remand. Because we

have found a basis for remand on these grounds, we need not address the plaintiff's

remaining arguments. To the extent that any other error occurred, it may be remedied on remand.

## IV.  <u>**Conclusion**</u>

Accordingly, for the foregoing reasons, this case will be REMANDED for further consideration.

An appropriate order follows.

*<u>S/ Martin C. Carlson</u>*
Martin C. Carlson
United States Magistrate Judge

DATED: June 27, 2024